# IN THE SUPREME COURT OF IOWA

No. 08–0330

Filed May 15, 2009

**STATE OF IOWA,**

    Appellee,

vs.

**PAUL GARRITY,**

    Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Christine Dalton, Judge.

Defendant appeals his conviction for OWI third offense contending the district court erred in denying his motion to suppress his breath test refusal and all evidence of his statements made to police after his request to contact another officer was wrongfully denied. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Thad Roche and Meredith Friedman, student interns, Michael J. Walton, County Attorney, and Marc Gellerman, Assistant County Attorney, for appellee.

**BAKER**, **Justice**.

In this application for further review, Paul Garrity seeks to overturn his conviction for operating while intoxicated ("OWI") third offense. He contends that the Scott County District Court erred in denying his motion to suppress his breath test refusal and all evidence of his statements to police after his request to contact another officer was denied. Specifically, Garrity alleges the State violated his rights under Iowa Code section 804.20 when the arresting officer denied Garrity's request to speak to a narcotics officer and did not explain that Garrity had a statutory right to speak to an attorney or a family member under section 804.20. We conclude that because the officer did not advise Garrity of the persons he was permitted to call as allowed under Iowa Code section 804.20, the State violated his rights, but this error was harmless, and Garrity is not entitled to a new trial.

## I. Background Facts and Proceedings.

Shortly after midnight on September 17, 2007, Officer Cockshoot responded to a 911 call. The caller alleged that a man driving a green Dodge Intrepid was drunk. Cockshoot found and stopped the driver, Paul Garrity, for speeding and failure to use a turn signal when changing lanes. Cockshoot observed that Garrity had slow, slurred speech and the smell of alcohol on his breath. Cockshoot then put Garrity in the squad car, while checking his driver's license. Another officer arrived and asked Garrity how much he had been drinking. Garrity claimed he had two beers. He later stated he had only one beer and one shot of sambuka. Garrity then told Cockshoot that he knew he was in trouble and asked him to call Matt Ehlers, an Iowa state narcotics officer. Garrity wanted to arrange some type of deal where he would reveal a

large drug operation and in return not do jail time. Cockshoot refused to make the call.

Garrity voluntarily performed and failed the field sobriety tests. He did submit to a preliminary breath test during this stop. At that point, he had a blood alcohol content of .133. Garrity was taken to the Scott County jail.

At the Scott County jail, Cockshoot read Garrity the implied consent advisory form. Garrity refused to give a breath sample. Garrity then asked Cockshoot if "you guys [could] fix this for me?" When Cockshoot questioned Garrity about driving while intoxicated, Garrity first stated he was not driving and then later said he was driving. During the questioning, Garrity also claimed he was not drinking. After being questioned, Garrity said to Cockshoot, "You're not going to call the guy, are you?" Cockshoot replied, "He has nothing to do with this," and "What's he going to do for me?" Cockshoot then told Garrity he could call the narcotics officer after he was released.

The State charged Garrity with OWI third offense, driving under suspension while barred as a habitual offender, and driving while license denied or revoked. Garrity filed a motion to suppress the refusal to take the breath test and the videotape based on Iowa Code section 804.20. The court denied the motion to suppress finding that Garrity was not attempting to seek advice from an attorney, but merely asked to speak with the narcotics officer in order to cut a deal and avoid arrest.

Garrity waived his right to a jury trial, and the court found him guilty of all three counts. Garrity appeals this conviction. However, on appeal, Garrity only challenges the OWI third offense conviction. Garrity claims the State violated Iowa Code section 804.20 by failing to inform him of his right to call an attorney or a family member when he

specifically asked to speak to Matt Ehlers, a narcotics officer. The State argues that Garrity's request to call the narcotics officer was not a legitimate request that would invoke this statutory right. The State also claims even if there was a violation, the trial court's failure to suppress the challenged evidence was harmless error because the court could have concluded Garrity was guilty of operating a vehicle while intoxicated even without evidence of his test refusal and the videotape of his interrogation, as that evidence was merely cumulative. The court of appeals affirmed the district court. Garrity now applies for further review.

**II. Scope of Review.**

We review the district court's interpretation of Iowa Code section 804.20 for errors at law. *State v. Moorehead*, 699 N.W.2d 667, 671 (Iowa 2005). If the district court applied the law correctly, and there is substantial evidence to support the findings of fact, we will uphold the motion-to-suppress ruling. *Id.* Evidence is considered substantial when reasonable minds could accept it as adequate to reach a conclusion. *Id.*

**III. Discussion and Analysis.**

**A. Invocation and Analysis of Iowa Code Section 804.20.** Iowa Code section 804.20 states:

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. An attorney shall be permitted to see and consult confidentially with such person alone and in private at the jail or other place of custody without unreasonable delay. A violation of this section shall constitute a simple misdemeanor.

Iowa Code § 804.20 (2007). The statute requires that arrestees be allowed to call both an attorney and a family member. Requests for either type of call are equally important. *State v. McAteer*, 290 N.W.2d 924, 925 (Iowa 1980).

The court first addressed this statutory right in *State v. Vietor*, 261 N.W.2d 828, 829–30 (Iowa 1978). In *Vietor*, the defendant was arrested and read his *Miranda* rights, but then told in the informed consent reading that he was not entitled to consult an attorney before deciding whether to undergo a chemical test. *Id.* The court found that although the statute did not require the officer to tell the arrestee that he had the right to counsel, the officer could not tell the arrestee that he did *not* have a right to counsel. *Id.* at 831.

The court also enunciated three statutory rules. *Id.* at 832. First, an arrestee that asks to call his lawyer should be permitted to do so before submitting to a chemical test. *Id.* Second, if that person is denied the opportunity to call a lawyer, the evidence of refusal to engage in the chemical test is inadmissible. *Id.* Third, the arrestee's right to prior consultation is limited to circumstances where it does not "materially interfere" with the chemical test procedure.[1] *Id.* We later stated that the statute is to be applied pragmatically by balancing the rights of the arrestee and the goals of the chemical-testing statutes. *State v. Tubbs*, 690 N.W.2d 911, 914 (Iowa 2005).

In *Didonato v. Iowa Department of Transportation*, 456 N.W.2d 367, 371 (Iowa 1990), we further explained an officer's duty under Iowa Code section 804.20. In that case, Didonato, the arrestee, demanded a phone call, but that request was denied. *Didonato*, 456 N.W.2d at 368.

---

[1]This rule is particularly important as "a chemical test is to be administered within two hours of the time of arrest or not at all." *Vietor*, 261 N.W.2d at 831; Iowa Code § 321J.6(2).

Didonato continued to ask for his phone call, but eventually signed an implied-consent form and provided a urine sample. *Id.*

In *Didonato*, the court held that when a request for a phone call is made, and the officer stands mute and refuses the request, the statutory purpose of section 804.20 is not met. *Id.* at 371. The fact that Didonato requested to call a friend, rather than an attorney or family member, did not change the duty of the police officer. *Id.* ("But when a request to make a phone call is made we do not believe the statutory purpose is met if the officer stands mute and refuses the request. Nor would there be any difference if the request is to call a friend. In these circumstances the statute is implicated and the officer should then advise for what purpose a phone call is permitted under the statute."). The officer must advise the defendant of the purpose of the phone call under the statute in a circumstance where the arrestee requests a phone call. *Id.* If the arrestee then decides to call a family member or attorney, the police must allow that phone call. *Id.*

Had we stopped at *Didonato*, the outcome would be clear. However, we recently decided another case that might suggest an alternate outcome. In *Tubbs*, the defendant originally agreed to chemical testing, but then changed his mind. *Tubbs*, 690 N.W.2d at 913. He asked to talk to his wife to have her read the document before signing it, but the officer remembered Tubbs' wife had a no-contact order, and did not allow the phone call. *Id.* Tubbs did not ask to talk to any other family member or attorney after being informed that the phone call would not be allowed because of the no-contact order. *Id.* Because he did not ask to contact someone other than his wife, we determined that under the unique facts of that case the officer had fulfilled the responsibilities under section 804.20 because Tubbs was not denied the opportunity to

talk to another family member or an attorney. *Id.* at 914. *Tubbs* is distinguishable because, unlike *Didonato* where there was confusion as to the people within the scope of section 804.20 who may be called, there was no confusion that triggered the duty to clarify the scope of the persons who may be called. Further, Tubbs made no further request to call someone else.

One purpose of Iowa Code section 804.20 is to allow the arrestee to call an attorney before making the decision to submit to chemical testing. *Tubbs*, 690 N.W.2d at 914. The statute, however, does not limit the phone call to that purpose. As long as the purpose of the phone call is a good faith purpose (e.g., not for ordering a pizza), the arrestee may choose to contact family or a legal representative for advice, or to have them inform his employer that he is not likely to be at work, pick up children from school, or arrange to have the dog let out. *See generally Bromeland v. Iowa Dep't of Transp.*, 562 N.W.2d 624, 626 (Iowa 1997).

Explaining the scope of this statutory right will not interfere with the chemical tests. People may be aware they have the right to a phone call, but are likely unaware of the specified people they are allowed to call. If, as here, the officer turns down the arrestee's phone call request because the request is to call someone not contemplated in the statute, the officer must explain the scope of the statutory right.

Garrity requested to make a phone call. We have stated when a request for a phone call is made, the police cannot remain mute and simply deny the request. That is precisely what Cockshoot did in this situation. Once Garrity asked to call a person outside the scope of section 804.20, Cockshoot had an obligation to advise Garrity of the purpose of the phone call, i.e., who Garrity could call, and he did not do

so. *Didonato*, 456 N.W.2d at 371. The State violated Iowa Code section 804.20.

**B. Exclusionary Rule.** We apply the exclusionary rule to violations of Iowa Code section 804.20, whether it is a violation of the right to communicate with family or with an attorney. *McAteer*, 290 N.W.2d at 925. The exclusionary rule extends to the exclusion of breath tests, breath test refusals, and non-spontaneous statements obtained after unnecessary delay in allowing the person the statutory right to consult with an attorney or family member. *Moorehead*, 699 N.W.2d at 675.

Under our rules, the test refusal must be excluded. *Vietor*, 261 N.W.2d at 832. The closer question is whether to exclude the DVD recording of Garrity taken at the police station. From the district court's opinion, it is evident that the court did not use statements from the DVD as the basis for its decision. Rather, the DVD was used to demonstrate Garrity's body motions, judgment, slurred speech and inability to communicate. Under this record, the exclusionary rule does not extend to the use of the recording for this purpose.

**C. Harmless Error.** Even though the district court erred in admitting evidence of Garrity's test refusal, Garrity is not automatically entitled to a new trial. A violation of Iowa Code section 804.20 is a nonconstitutional error. *See Moorehead*, 699 N.W.2d at 672.

> Where a nonconstitutional error [i]s claimed, the test for determining whether the evidence [i]s prejudicial and therefore require[s] reversal [i]s this: "Does it sufficiently appear that the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice?"

*State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004) (quoting *State v. Trudo*, 253 N.W.2d 101, 107 (Iowa 1977). In applying this test, we presume

prejudice unless the record affirmatively establishes otherwise. *Moorehead*, 699 N.W.2d at 673. However, we can find harmless error when evidence obtained from a violation of Iowa Code section 804.20 would merely be cumulative. *State v. Enderle*, 745 N.W.2d 438, 442 (Iowa 2007).

The police stopped Garrity after responding to a 911 call that identified a possible drunk driver. Garrity was actually pulled over for speeding and failure to use a turn signal. Cockshoot observed that Garrity had slurred speech and the smell of alcohol on his breath. Before Garrity asked Cockshoot to contact narcotics officer Matt Ehlers, he admitted to drinking. Garrity also failed all three field sobriety tests. The judge who entered the verdict in this case specifically stated that she observed the recording taken at the police station and determined that Garrity was intoxicated based upon his body motions, judgment, slurred speech, and inability to communicate. There is no indication that she took into consideration the content of Garrity's statements on the recording, and the test refusal was not a factor in her decision. *Cf. Moorehead*, 699 N.W.2d at 673 ("Moorehead's high breath test result is the very first fact cited as evidence of guilt. Mindful of a defendant's right to a fair trial and just application of our rules, . . . it cannot be fairly said that the breath test result did not injuriously affect Moorehead's rights. The district court's error in admitting this evidence clearly prejudiced Moorehead."). We find that any violation of Garrity's rights under Iowa Code section 804.20 was harmless error. Garrity is not entitled to a new trial.

**IV. Disposition.**

We conclude that because the officer did not advise Garrity of the purpose of the phone call allowed under Iowa Code section 804.20, the

State violated his rights, and evidence of Garrity's test refusal should have been suppressed. Nonetheless, this error was harmless, and, therefore, Garrity is not entitled to a new trial.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**