# IN THE COURT OF APPEALS OF IOWA

No. 15-0786
Filed March 23, 2016

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**TANYA LYNN CODER,**
     Defendant-Appellant.

_____

Appeal from the Iowa District Court for Muscatine County, Stuart P. Werling (motion to suppress), Judge, and Gary P. Strausser (trial and sentencing), District Associate Judge.

The defendant appeals her conviction and sentence. **AFFIRMED.**

Leah Patton, Walcott, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

On May 31, 2014, at approximately three o'clock in the morning, a Muscatine County deputy sheriff pulled over a vehicle after observing the rear license plate was not illuminated. The deputy approached the driver, now known to be Tanya Coder, and told her there was no license plate light on the vehicle. Coder responded, "Oh. I have been drinking." And she had been; field sobriety tests established she was operating while intoxicated. She was placed under arrest. Following a trial on the minutes of testimony, Coder was convicted of operating a motor vehicle while intoxicated, third offense, in violation of Iowa Code section 321J.2(1)(a) (2013), and several other traffic and licensure offenses. She was sentenced to an indeterminate term of incarceration not to exceed five years, with all but ninety days suspended. The district court ordered mittimus to issue immediately for the ninety-day sentence to be served in the Muscatine County Jail. On appeal, Coder contends the district court erred in denying her motion to suppress evidence. She also contends the district court abused its discretion in imposing sentence.

I.

Coder first contends that the traffic stop violated her right to be free from unreasonable search and seizure as protected by the federal and state constitutions and that the district court should have suppressed the evidence obtained as a result of the traffic stop. The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment

is applicable to state actors by incorporation via the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 660 (1961). The text of article I, section 8 of the Iowa Constitution is materially indistinguishable from the federal constitutional provision. Although Coder raises her claims under both the Federal and Iowa Constitutions, she does not argue for a different standard under the Iowa Constitution. "Where a party raises issues under the Iowa Constitution and the Federal Constitution, but does not suggest a different standard be applied under the Iowa Constitution, we generally apply the federal standard." *State v. Edouard*, 854 N.W.2d 421, 452 (Iowa 2014) (Appel, J., concurring specially).

"When a peace officer observes a traffic offense, however minor, the officer has probable cause to stop the driver of the vehicle." *State v. Harrison*, 846 N.W.2d 362, 365 (Iowa 2014). "The motivation of the officer stopping the vehicle is not controlling in determining whether reasonable suspicion existed. The officer is therefore not bound by his real reasons for the stop." *Id.* The deputy stopped Coder's vehicle because it did not have an illuminated license plate, in violation of Iowa Code section 321.388, which provides in pertinent part, "Either the rear lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear." In *State v. Lyon*, 862 N.W.2d 391, 398 (Iowa 2015), the supreme court held the "the statute may be violated if there is no illumination of the license plate at all from a white light or if the illumination, though present, is so weak that the license plate is not clearly legible from a distance of fifty feet."

Coder does not challenge the proposition that a violation of code section 321.388 would provide probable cause to support a lawful traffic stop. Instead, she contends the rear license plate of her vehicle was, in fact, illuminated, as evidenced by the dashboard camera recording of the traffic stop. Relatedly, she argues the deputy could not have accurately determined whether her license plate was illuminated because he took no action to verify his initial observation prior to making the traffic stop. *See Lyon*, 862 N.W.2d at 394 (noting officer confirmed his vehicle's headlights did not illuminate license plate); *State v. Knapp*, No. 08-1918, 2009 WL 4842395 at *1 (Iowa Ct. App. Dec. 17, 2009) (noting officer turned off his vehicle's headlights to determine whether the license plate lamp was functioning); *State v. Gustafson*, No. 08-1429, 2009 WL 4842474 at *3 (Iowa Ct. App. Dec. 17, 2009) (noting officer "backed off" vehicle and followed vehicle into darker area to confirm patrol car headlights were not illuminating vehicle). Coder does not at all explain why, even if her arguments prevailed, the traffic stop would have been unlawful and suppression required. *See State v. Tyler*, 830 N.W.2d 288, 294 (Iowa 2013) ("Our precedent is clear that a mistake of fact may justify a traffic stop.").

We need not address the issue, however, because on de novo review, we conclude the license plate was not illuminated as required by statute and the stop was supported by probable cause. The deputy conducting the traffic stop testified the license plate was not illuminated. His testimony is corroborated by other evidence. In the last several minutes of the dashboard-camera recording, once the lights from the deputy's vehicle are no longer reflecting off the rear of Coder's vehicle, one can determine the vehicle license plate was not illuminated.

Further, on the recording, the deputy told Coder he had pulled her over because the license plate was not illuminated.  Finally, during the course of the traffic stop, Coder and the deputy were behind Coder's vehicle for an extended period of time, and Coder never protested that the license plate was, in fact, illuminated. The district court did not err in denying Coder's motion to suppress evidence on this ground.

## II.

Coder also contends that evidence (without specifying what evidence) obtained at the sheriff's office after she was placed under arrest should have been suppressed because it was obtained in violation of her statutory right to contact a family member and consult with counsel as protected by section 804.20.  This provision provides:

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. An attorney shall be permitted to see and consult confidentially with such person  alone and in private at the jail or other place of custody without unreasonable delay. A violation of this section shall constitute a simple misdemeanor.

Iowa Code § 804.20.  Our courts have interpreted this provision to "insist[ ] that law enforcement officers not play games when faced with a request from a person in custody to communicate with the outside world after being arrested." *Lyon*, 862 N.W.2d at 401.  Traditionally, the remedy for a violation of this statute

is suppression of the breath-test results. *See State v. Walker*, 804 N.W.2d 284, 296 (Iowa 2011) ("The district court applied the remedy mandated by more than a generation of our precedent—suppression of the breath-test results.")

Review here is for correction of errors at law. *Lyon*, 862 N.W.2d at 394. The district court's ruling will be upheld where there is substantial evidence to support it. *Id.* The record reflects that, at the jail, Coder asked to call her husband. The call was allowed, and Coder spoke to her husband, but the deputy told Coder her husband would not be able to come back to the holding cell to meet with her. Coder also asked to call attorney Robert DeKock. She placed four calls to DeKock and left voice mail messages, but she was not able to speak with him directly. Coder told the deputy that she would not take the requested breath test until she had the chance to speak with DeKock. The deputy told Coder that she was required to take the test within a two-hour window and he would consider this a refusal to take the test.

We need not reach the merits of Coder's statutory claim because any alleged error in denying the motion to suppress evidence on this ground was harmless. *See State v. Garrity*, 765 N.W.2d 592, 597 (Iowa 2009) (violation of section 804.20 was harmless error where court did not consider evidence defendant sought to exclude); *cf. State v. Moorehead*, 699 N.W.2d 667, 673 (Iowa 2005) (violation was not harmless error where trial court emphasized test result whose exclusion was sought as evidence of guilt). There was overwhelming evidence of Coder's guilt excluding any evidence obtained after the alleged statutory violations. During the roadside detention, Coder volunteered on several occasions that she had been drinking. She was in

possession of an open container of cold beer at the time of the traffic stop. The deputy detected an odor of alcohol on her breath. Her eyes were bloodshot and watery. The minutes show Coder had difficulty maintaining her balance upon exiting the vehicle. Coder failed field sobriety testing, demonstrating the maximum level of impairment. Finally, we note the district court did not consider Coder's refusal of the breath alcohol test in reaching its decision:

> In reaching this conclusion the Court did not rely on the fact that the defendant refused the breath alcohol test. There is ample evidence the defendant was under the influence of alcohol when driving the motor vehicle. The Court recognizes it may consider a refusal as evidence of intoxication; however, in this case the Court declines to do so given that it is clear the refusal was motivated by the fact the defendant wished to speak with her attorney.

For the foregoing reasons, any violation of section 804.20 was harmless error and does not require reversal of Coder's conviction.

III.

Coder also challenges her sentence. Specifically, Coder contends her sentence should have been set at the mandatory minimum of thirty days and not the ninety days she received. Sentencing decisions of the district court are cloaked with a strong presumption in their favor. *State v. Thomas*, 547 N.W.2d 223, 225 (Iowa 1996). Where the defendant does not assert the sentence is outside statutory limits, the sentence will be set aside only for an abuse of discretion. *Id.* An abuse of discretion is found only when the sentencing court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Id.* In exercising its sentencing discretion, the district court must weigh all pertinent factors, which include the defendant's age, defendant's prior record, defendant's employment circumstances, defendant's

family circumstances, defendant's mental health and substance abuse history and treatment options available, nature of the offense, and other appropriate factors. Iowa Code § 907.5(1).

The record reveals the court exercised its discretion based on the consideration of several permissible factors without consideration of any impermissible factors:

> I find this case to be a very close call for whether that sentence should be imposed or whether you should be placed at the OWI facility. Obviously the factors that point toward placement at the OWI facility include the recency of the prior offenses, 2010 and 2013. Those are two offenses, two prior offenses, and now a third within a very short period of time. Obviously the factors that mitigate against placement in the OWI facility include the things outlined by your attorney, including you do have the ability to maintain employment; you do have family connections; there was no injury in this case or no other exacerbating factors; you have done everything that we would ask you to do as far as treatment and rehabilitation are concerned. For that latter reason, I do not believe you would be an appropriate candidate for the OWI facility, because the OWI facility provides for punishment and rehabilitation, and you are capable of doing the rehabilitation here within the community. So the sentence to the Department of Corrections will be suspended; however, you will be ordered to serve 90 days in the Muscatine County Jail. The reason that you will be ordered to serve 90 days is obviously some of the things I've mentioned. This is a third offense in a relatively short period of time. You received the benefit of a deferred judgment, I believe it was, in Scott County and in Illinois. They don't call it a deferred judgment, but essentially it's the same thing. And despite being arrested twice for Operating While Intoxicated, you continued with the same conduct.

The district court further noted:

> If the Court suspends the sentence, the Court shall order the person to serve not less than 30 days or more than one year. Certainly a year is not appropriate under the facts I outlined earlier, but neither is – does the Court believe that the minimum 30 days is appropriate due to her criminal history and inability to stop making the same mistakes while also recognizing her efforts towards rehabilitation. The Court finds this is the most appropriate sanction.

Coder has not identified any abuse of discretion, and we find none.

IV.

For the above-stated reasons, we affirm the defendant's convictions and sentences.

**AFFIRMED.**